IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| BOBBY JOE GRUNDY and<br>B. J.'S GARAGE, Inc.,<br><br>        Plaintiff,<br><br>vs.<br><br>GARY WILBANKS, et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)    CV 99-BU-2079-M<br>)<br>)<br>)<br>) |

ENTERED
SEP 29 2000

## MEMORANDUM OPINION

Before the Court are the motions for summary judgment filed by seven of the defendants named in this action. Also before the Court are various motions filed by the plaintiff, Bobby Joe Grundy.

Plaintiff Grundy, an Alabama prisoner serving a sentence of imprisonment for life without possibility of parole, filed this *pro se* civil action pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*[1] In his complaint, Grundy names as defendants Gary Wilbanks, A.B. Bonding Company, Inc., Louis Vaughn, Geneva Vaughn, Jack Caddell, attorneys Joseph W. Propst, Thomas Caddell, John Sims, and Scott Slate, Morgan County Probate Judge Bobby Day, Morgan County Circuit Court Clerk Pat Orr, and Morgan County Circuit Court Judges Glenn Thompson, Sherrie Brown, and Steve Haddock. Grundy alleges that Defendants

---

[1] Plaintiff B. J.'s Garage, Inc., was a business operated by Plaintiff Grundy prior to his incarceration.

A. B. Bonding Company, Wilbanks, Propst, Jack Caddell, and Thomas Caddell have "conspire[d] with the other herein named Defendants to extort, take, defraud, and bribe plaintiff's [sic] and other people of African descent of real and or personal property located in Morgan County, Al[abama,] in direct violation of Tit[le] 18 U.S.C. Sec. 1962." Complaint (Document #1) at 2. He seeks money damages and an order "directing [Defendant] Wilbanks to divest himself of any and all interest in the real and personal property made the subject of this action."[2] Complaint at 6.

Defendant Day filed a motion to dismiss (Document #11) in which he raises the defense of judicial immunity. Defendants Jack Caddell and Thomas Caddell filed motions to dismiss (Documents #5 and #14) in which each asserts that Grundy has failed to state a claim upon which relief can be granted. Defendant Jack Caddell also filed an amended motion to dismiss (Document #17), attaching his affidavit and various documents. Defendants Orr, Thompson, Brown, and Haddock filed a special report (Document #19) accompanied by pertinent documents and their affidavits. In their special report, Defendants Thompson, Brown, and Haddock raise the defense of judicial immunity and Defendant Orr raises the defense of quasi-judicial immunity.

By order entered February 11, 2000 (Document #25), the parties were notified that the motions to dismiss (Documents #5, 11, and 14), the amended motion to dismiss (Document #17), and the special report (Document # 19) would be construed as motions for summary judgment, and plaintiff was notified of the provisions and consequences of Rule 56, FED. R. CIV. P. By this same

---

[2]Grundy also asks that the Court "refer the matter to the Justice Department for investigation and criminal prosecution." A private citizen, however, has no "judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) This Court is therefore without authority to grant this particular relief. *See Otero v. United States Attorney General*, 832 F.2d 141 (11th Cir. 1987).

2

order, the parties were advised that they would have twenty (20) days to "submit any relevant evidence and argument in support or opposition to the merits." *Marine Coatings of Alabama, Inc. v. United States*, 792 F.2d 1565, 1567 (11th Cir. 1986) *rev'd on other grounds*, 932 F.2d 1370 (11th Cir. 1991). In response to this order, Defendant Jack Caddell filed a supplemental affidavit (Document #28); Defendant Thomas Caddell filed a supplemental brief (Document #30) accompanied by his affidavit; and Plaintiff Grundy filed a response in opposition to summary judgment (Document #35), accompanied by his affidavit and various documents. No other summary judgment materials have been submitted.

## MOTIONS REGARDING DISCOVERY

After entry of the order notifying the parties that the motions to dismiss filed by Defendants Jack Caddell, Thomas Caddell, Bobby Day, Pat Orr, Glenn Thompson, Sherrie Brown, and Steve Haddock would be construed as motions for summary judgment, Plaintiff Grundy filed two motions seeking the production of certain documents by these defendants (Documents #32 and #33). As noted above, Defendants Day, Orr, Thompson, Brown, and Haddock have asserted immunity defenses. Defendants entitled to immunity are shielded not only from liability, but also from the hardships of discovery. *See Anderson v Creighton*, 483 U.S. 635, 646 n. 6 (1987); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The motions for discovery as to Defendants Day, Orr, Thompson, Brown, and Haddock are therefore due to be denied at this time. *See Schultea v. Wood*, 47 F. 3d 1427, 1433 (5th Cir. 1995).

The discovery materials sought from Defendants Jack Caddell and Thomas Caddell appear to all be court orders, complaints, and other documents filed in Morgan County Circuit and Probate

3

Courts, all of which would be matters of public record. "It is well established that discovery need not be required of documents of public record which are equally accessible to all parties." *Dushkin Pub. Group, Inc. v. Kinko's Service Corp.*, 136 F.R.D. 334, 335 (D. D.C. 1991) (*quoting Securities and Exch. Comm'n v. Samuel H. Sloan & Co.*, 369 F.Supp. 994, 995 (S.D.N.Y.1973)). Grundy has made no assertion that it would be burdensome, financially or otherwise, to obtain the documents sought from the Morgan County Circuit and Probate Courts rather than to require Defendants Jack Caddell and Thomas Caddell to produce them. Moreover, it appears from the attachments to Grundy's Response in Opposition to Summary Judgment (Document #35) that Grundy obtained the documents prior to filing his response. Accordingly, the motions for discovery as to Defendants Jack Caddell and Thomas Caddell are due to be denied.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the Court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not

merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Court of Appeals for the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

## FACTUAL BACKGROUND

On June 25, 1982, May 23, 1983, September 12, 1983, and January 18, 1984, Grundy's grandfather, Zenas L. Robinson, executed a total of seven deeds (four of which were executed on May 23, 1983) conveying ownership of certain tracts of real property to Celestine Smith, Louis Vaughn, Idell Vaughn, Lucille Summers, Geneva Vaughn, and David Daniel Fletcher. Three of these deeds conveyed sole ownership of the realty concerned to one individual; two of the deeds conveyed ownership to two of the individuals jointly; and the remaining deed conveyed ownership

5

to three of the individuals jointly. Of the six transferees, only Louis M. Vaughn and Geneva Vaughn are named as defendants in this action. The four deeds transferring property interests to these two Defendants were executed on May 23, 1983, and January 18, 1984. Response in Opposition to Summary Judgment (Document #35), Exhibit A at 3-10.

During "the latter part of 1985," Defendant Day, as Probate Judge of Morgan County, "presided over an inquisition hearing related to the competency of Zenas L. Robinson." Day Affidavit (Attachment to Document #11) at 1. On December 10, 1985, Probate Judge Day entered a judgment, based on a jury verdict, declaring Robinson to be of unsound mind. That judgment was "recorded in Probate Record No. 181, Page 562," thereby becoming a matter of public record. *Id.* at 2; Exhibit 1 to Document #11; Plaintiff's Response in Opposition to Summary Judgment (Document #35), Exhibit A at 1-2. Thereafter, Probate Judge Day was notified that Robinson had died on December 28, 1985, and that a guardian would therefore not be needed for his estate. Day Affidavit at 2; Exhibit 2 to Document #11; Plaintiff's Response in Opposition to Summary Judgment (Document #35), Exhibit A at 11. In March, 1986, Day, as Probate Judge, admitted Robinson's will to probate. Day Affidavit at 2; Exhibit 3 to Document #11. The sole beneficiary under this will was Gloria Bynum Huffman. Exhibit 3 to Document #11. Item IV of the will stated that no provision was being made for any other relative or children "because they have ample property of their own." *Id.*

Jack Caddell avers that he "had nothing whatsoever to do with" the deed executed by Zenas Robinson on May 23, 1983, conveying 22 acres of land to Lucille Summers, Louis M. Vaughn, and Geneva Vaughn, and states that, at the time of that conveyance, he did not know Robinson,

Summers, or either of the Vaughns. Document #17 at 2. Caddell further avers that he "had nothing whatsoever to do with" the Robinson competency proceeding or the probate of Robinson's will. *Id.*

At an unspecified point in time, Plaintiff Grundy purchased "several trac[t]s of real estate in Morgan County, Alabama, and had it placed in [the name of his father], Murel Stevenson." Complaint at 3. When Stevenson died, Grundy "became the joint heir with Ruth Stevenson [Stevenson's estranged wife] to Murel Stevenson's property." *Id.* (It appears that Stevenson died intestate.) Grundy "offered Ruth Stevenson five (5) of the trac[t]s of land (the greater part) and agreed to keep only two (2) small trac[t]s which included the trac[t] upon which plaintiff's home and business w[ere] located." *Id.* In 1995, however, Ruth Stevenson filed an action in state court seeking a sale for division of the property she and Grundy owned jointly. *See* Records of CV 95-500075, Attachment to Brown Affidavit (Exhibit C to Document #19). Mrs. Stevenson was represented in this action by Defendant Thomas Caddell, a Decatur attorney specializing in real estate and general civil litigation. T. Caddell Affidavit (Attachment to Document #30) at 1. It appears that Grundy was represented in this action first by attorney Scott Slate, and later by attorney John Sims. *See* Records of CV 95-500075.

During the course of the proceedings in the case, Grundy, who by that time had been convicted and was in the custody of the Alabama Department of Corrections "serving two life sentences,"[3] filed a motion to be transferred to Morgan County to attend a civil docket call." Thompson Affidavit (Exhibit B to Document #19) at 1. Morgan County Circuit Court Judge Glenn Thompson denied the motion "because [he] felt like it would be a security risk to have [Grundy]

---

[3]Plaintiff Grundy has informed the Court that he is serving a sentence of imprisonment for life without possibility of parole. Document #15.

7

transported." *Id*. Due to the case management system utilized in Morgan County Circuit Court, Morgan County Circuit Judge Sherri Brown may also have entered pre-trial orders in this action. Brown Affidavit (Exhibit C to Document #19) at 1-2.

The suit for division was ultimately tried before Morgan County Circuit Judge Steven Haddock. T. Caddell Affidavit at 2. Although Grundy was not present due to his incarceration, he was represented at this trial by counsel and "family members and friends were present to testify on his behalf." *Id*. On August 4, 1997, Judge Haddock entered a judgment finding that Grundy and Mrs. Stevenson owned the property as tenants in common, with each having a one-half interest, and ordering the Clerk of the Court to sell the property at a public auction for division of the proceeds. Orr Affidavit (Exhibit A to Document #19), Attachment 10. The Clerk was further directed to hold the auction "during the legal hours of sale" on September 8, 1997, "after first giving notice of the time, terms and place of sale by advertisement once a week for three consecutive weeks in a newspaper of general circulation published in Morgan County." *Id*. at 4. Judge Haddock also directed that "[a]ny lien or encumbrance against the interest of either party shall be paid and satisfied out of the net proceeds of the responsible party." *Id*. at 5.

In accordance with the judgment entered by Judge Haddock, Pat Orr, as Clerk of the Circuit Court of Morgan County, published the requisite notice of sale and sold the property at a public auction. Orr Affidavit. At the auction, which was held at 11:00 a.m. on September 8, 1997, Orr explained that the highest bidder must deliver cash or certified funds to his office by 4:30 p.m. that same day "and if the funds were not in [his] office by 4:30 p.m. the said property would be offered to the next highest bidder." Orr Affidavit, Attachment 3. The highest bidder at auction was Lois Bouldin, with a bid of $43,500. When Ms. Bouldin failed to deliver the required funds to Orr's

8

office by 4:30 p.m. September 8, 1997, Orr offered the property to Gary Wilbanks, who had the second highest bid at $43,000. Wilbanks apparently delivered the required funds to Orr's office as Orr filed a "Report of Non-Compliance" setting forth the above facts and stating that he was "holding the said funds in his possession pending further orders of this Court." *Id*. On September 22, 1997, Judge Haddock entered an order finding that Ms. Bouldin had "failed to comply with the terms of the sale held September 8, 1997," and ordering that the property be sold to Wilbanks as the next highest bidder. Orr Affidavit, Attachment 4. This order further directed Orr to disburse the funds and complete the sale.

In a report to Judge Haddock dated September 26, 1997 (Orr Affidavit, Attachment 6), Orr stated that he had ascertained that $4,300 was a reasonable fee to be paid attorney Thomas A. Caddell for his representation of Mrs. Stevenson, the plaintiff in the division action. Orr further certified that filing fees, the cost of advertising the sale, and court costs were also due to be paid out of the proceeds of the sale, leaving a balance of $36,665.78 to be disbursed to the parties. Orr then certified that, of this amount, $18,332.89 was payable to Mrs. Stevenson and the $18,332.89 due Plaintiff Grundy was payable as follows:

> $10,748.40 to Internal Revenue Service to satisfy outstanding tax amounts supported by lien notice filed as UCC No. 7572 on June 22, 1993, Morgan County Probate Office, and $3,720.00 to AB Bonding, Inc. to satisfy its mortgage from Bobby Joe Grundy dated July 25, 1995, and recorded in Book 1572, Page 772, Morgan County Probate Office, with balance of $2,864.49 payable to Bobby J. Grundy.

Orr Affidavit, Attachment 6 at 2. Upon consideration of Orr's report, Judge Haddock entered a Final Judgment directing that the funds be disbursed in accordance therewith. Orr Affidavit, Attachment 7. Following an appeal by Grundy, the Alabama Court of Civil Appeals affirmed the judgment

9

without published opinion. Grundy's petition for a writ of certiorari was denied by the Alabama Supreme Court. T. Caddell Affidavit at 2.

It appears that Gary Wilbanks, the ultimate purchaser at auction of the property owned by Grundy and Mrs. Stevenson, either owns, works for, or otherwise has some connection with A. B. Bonding Company, Inc. Circuit Judge Thompson states that Wilbanks has appeared before him to testify as to "bond forfeitures and the whereabouts of defendants who ha[ve] failed to appear." Thompson Affidavit at 1. Both Circuit Judge Thompson and Circuit Judge Haddock state that they have reviewed and approved applications by A. B. Bonding Company, Inc., "to serve for one year as one of the professional bail bonding companies in Morgan County." Thompson Affidavit at 1; Haddock Affidavit at 1. Both judges also state that they do not know Gary Wilbanks on a personal basis and have had no dealings with him other than in their judicial capacities. Thompson Affidavit at 1; Haddock Affidavit at 1. All three Morgan County Circuit Judges assumed their current judicial positions on January 17, 1995. Brown Affidavit at 1.

Prior to filing the instant action, Grundy filed a complaint in the Circuit Court of Morgan County naming four defendants, two of which (Gary Wilbanks and John Pat Orr) are also defendants in this action. Attachment to Document #22; Records of CV 99-000435, Attachments to Brown Affidavit. In that complaint Grundy attempts to assert claims of fraud, theft of property, misrepresentation, and trespass. It appears that the action is still pending. *See* Records of CV 99-000435.

## IMMUNITY DEFENSES

As noted above, Probate Judge Bobby Day and Circuit Court Judges Glenn Thompson, Sherrie Brown, and Steve Haddock have asserted the defense of judicial immunity, while Circuit Court Clerk Pat Orr has asserted the defense of quasi-judicial immunity. It is well settled that judges are entitled to the defense of absolute judicial immunity and are not subject to liability for damages for actions committed within their jurisdiction. This immunity applies in civil RICO actions. *Slater v. Jokelson*, 1997 WL 164236 at 7 (E.D. Pa. 1997); *Reaves v. Honorable Peace*, 1996 WL 679396 at 8 n.6 (E.D. Va. 1996), *aff'd*, 108 F. 3d 1373 (4th Cir. 1997)(Table). *See also Lal v. Borough of Kennett Square*, 935 F.Supp. 570, 573 (E.D. Pa. 1996) (dismissing action, which included a RICO claim, against a judge on the basis of judicial immunity). Moreover, "[t]his immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (*citing Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). *Accord, Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986); *Wahl v. McIver*, 773 F.2d 1169, 1172 (11th Cir. 1985). Judges Day, Thompson, Brown, and Haddock are therefore entitled to absolute judicial immunity from damages liability in this action and their motions for summary judgment are due to be granted on this basis.

The defense of quasi-judicial immunity derives from absolute judicial immunity, *Roland v. Phillips*, 19 F. 3d 552, 555 (11th Cir. 1994), and protects a court clerk when "perform[ing] tasks that are an integral part of the judicial process," *Boyer v. County of Washington*, 971 F.2d 100, 102 (8th cir. 1992), *cert. denied*, 508 U. S. 974 (1993). "When an official acts pursuant to a direct judicial order, absolute quasi-judicial immunity is obvious." *Roland v. Phillips*, 19 F. 3d 552, 556 n.4 (11th

11

Cir. 1994). As the Court of Appeals for the Tenth Circuit has explained in holding that law enforcement officers acting upon a facially valid court order are entitled to absolute quasi-judicial immunity:

> Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process.
>
> . . . .
>
> Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both. . . . The public interest demands strict adherence to judicial decrees. . . . Absolute immunity will ensure the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them.

*Valdez v. Denver*, 878 F.2d 1285, 1288, 1289 (10th Cir. 1989), *quoted in Roland v. Phillips*, 19 F. 3d at 556. This same reasoning applies to court clerks who are following a judge's direct orders.

Like absolute judicial immunity, absolute quasi-judicial immunity applies in RICO actions. *Garringer v. Daniels*, 1994 WL 642409 at 2, 41 F. 3d 1510 (7th Cir. 1994) (Table). *See also Kashelkar v. MacCartney*, 79 F. Supp. 370, 372 (S.D. N.Y. 1999) (dismissing action, which included a RICO claim, against court officer on the basis of quasi-judicial immunity). It is clear that all actions taken by Morgan County Circuit Court Clerk Pat Orr in connection with the matters involved in this case were performed at the order of Morgan County Circuit Court Judge Haddock. Defendant Orr is therefore entitled to absolute quasi-judicial immunity from damages liability in this action and his motion for summary judgment is due to be granted on this basis.

### DEFENDANTS JACK CADDELL and THOMAS CADDELL

Grundy alleges in this action that the Defendants "have conspired to extort, take, defraud, and bribe plaintiff, plaintiff's grandfather and people of African descent and poor white of real and personal property" in violation of RICO. Plaintiff's Response in Opposition to Summary Judgment (Document #35) at 1.

Under the RICO statute, it is "unlawful for any person employed by or associated with any enterprise . . . to conduct . . . such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). In order to prove a RICO violation, a plaintiff "must show 1) that there were two or more predicate offenses; 2) that an 'enterprise' existed; 3) that there was a nexus between the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors." *VanDenBroeck v. CommonPoint Mtg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000). *See also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Racketeering activity" is defined in 18 U.S.C. § 1961(1) to mean certain specified predicate offenses or acts, which include extortion, bribery, and specific types of fraud.

It is also "unlawful [under RICO] for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [§ 1962]." 18 U.S.C. § 1962(d). "The core of a RICO civil conspiracy is an agreement to commit predicate acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990). A plaintiff alleging a civil RICO conspiracy must allege not only facts establishing that the defendants entered into an agreement to commit predicate acts, but also must allege facts demonstrating that the defendants knew that the acts were part of a pattern of racketeering activity. *Glessner v. Kenny*, 952 F.2d 702, 714 (3d Cir.1991), *overruled on other grounds, Jaguar Cars, Inc.*

*v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258 (3d Cir.1995); *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 47 (1st Cir.1991).

In the present case, Plaintiff Grundy repeatedly asserts that the Defendants have "conspired" to extort, bribe, and defraud him and other individuals. He also asserts that "for years," Jack Caddell, Thomas Caddell, and the other Defendants "racketeered through the form of an enterprise" to deprive him and other individuals of their real and personal property through the illegal "use of the court system." Plaintiff's Response in Opposition to Summary Judgment (Document #35) at 3. The evidence submitted in this case establishes that Grundy's grandfather conveyed a substantial amount of real property to various persons, that the grandfather was <u>thereafter</u> declared to be of unsound mind, and that, after his death, the grandfather's will was admitted to probate. The evidence also establishes that property held jointly by Grundy and Mrs. Stevenson was sold for division. There is absolutely no evidence, however, that Defendants Jack Caddell and Thomas Caddell knowingly entered into a conspiracy with any of the other Defendants for the purpose of committing a predicate act under RICO.

With regard to Jack Caddell, plaintiff has failed to allege facts showing that Jack Caddell had any connection with the specific incidents complained of. While Grundy makes the conclusory assertion that Jack Caddell "assisted the Vaughns and Lucille Summers to defraud Robinson, [his] grandfather, out of 22 acres of land," Plaintiff's Response in Opposition to Summary Judgment (Document #35) at 3-4, he has offered no specific factual allegations or documentation to support that assertion. With regard to Thomas Caddell, the evidence establishes only that Thomas Caddell represented Mrs. Stevenson in the action to divide the real property she held jointly with Grundy. While Grundy has submitted copies of letters written by Thomas Caddell to Defendants Sims and

14

Slate, the attorneys representing Grundy in that action, Plaintiff's Response in Opposition to Summary Judgment (Document #35), Exhibit B at 8-9, Exhibit C at 3, 5, it is clear that these letters are nothing more than routine correspondence related to the litigation. Grundy's repeated assertions that the Defendants "conspired" in violation of RICO simply does not establish a RICO conspiracy. Even a *pro se* plaintiff "must allege facts, not legal conclusions." *Hanson v. Town of Flower City*, 679 F.2d 497, 504 (5th Cir. 1982). two or more predicate crimes). Because there is no evidence that either Jack Caddell or Thomas Caddell entered into an agreement with any of the other Defendants to commit predicate acts of racketeering, those two Defendants are entitled to summary judgment in this action.

## MOTIONS TO COMPEL RESPONSES

Defendants Louis Vaughn and Scott Slate have not filed any response to Grundy's complaint and Grundy has filed a "Motion to Compell [sic] Defendants to Answer" (Document #21) seeking an order directing these Defendants to respond.[4] Grundy has also filed a motion (Document #23) by which he seeks to have the court direct Defendant Scott Slate to "accept pleadings from the Plaintiff or provide Plaintiff with his mailing address." Attached to this motion is an envelope addressed to Defendant Slate at P.O. Box 2323, Decatur, Alabama, 35602. The envelope bears the stamped notation "Returned to Sender -- Undeliverable as Addressed" and appears to have been returned to Grundy by the United States Postal Service.

---

[4]Plaintiff has included Defendant Thomas Caddell in this motion. Because Defendant Thomas Caddell had clearly filed a response prior to the time Grundy filed this motion, the motion is moot as to Defendant Thomas Caddell.

15

Plaintiff Grundy paid the entire $150.00 filing fee at the time he submitted his complaint for filing and therefore has not proceeded as a pauper in this action. Along with his complaint and the entire filing fee, Grundy also submitted summonses and complaints for each of the Defendants. The summons for Defendant Louis Vaughn bore a Landover, Maryland, address and the summons for Defendant Scott Slate bore a Decatur, Alabama, address. An order was entered (Document #3) in which Grundy was advised that it was his responsibility under Rule 4(c)(1), FED. R. CIV. P., to serve each of the named defendants with a summons and complaint. Grundy's attention was specifically directed to Rule 4, FED. R. CIV. P., and Rule 4.1, ALA. R. CIV. P.,[5] and copies of those rules were attached to the order. The summonses were signed by the clerk of the court and the seal of the court was attached to each, and the summonses and complaints were returned to Grundy for him to effect service thereof.

Grundy thereafter filed a "Notification of Service" (Document #6) in which he "certif[ied]" to the court that he had

> served a copy of the Complaint and Summons on all named Parties in this complaint, by placing a copy of the same, with an attached Summon[s], in the United States Mail pursuant to Rule 4(c)(1) of the Federal Rules of Civil Procedure, Postage prepaid and properly addressed on the 7th day of September, 1999.

Grundy did not provide any further information regarding service of the complaints in his notification.

---

[5] Rule 4(e)(1), FED. R. CIV. P., provides, in pertinent part, that service upon an individual, other than an infant or an incompetent, may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State."

Rule 4(c)(1), FED. R. CIV. P., to which Grundy referred in his Notification of Service, provides:

> A summons shall be served together with a copy of the complaint. The plaintiff is responsible for service of the summons and complaint within the time allowed under subsection (m) and shall furnish the person effecting service with the necessary copies of the summons and complaint.

Rule 4(c)(2) then provides that "[s]ervice may be effected by any person who is not a party and who is at least 18 years of age." Thus, with regard to a method of effecting service, Rule 4(c) speaks only to personal or "in hand" service of a defendant.

It is Rule 4(d), FED. R. CIV. P., that authorizes service by mail. Under this rule, a plaintiff may notify the defendant of the commencement of an action and request that the defendant waive service of a summons. In order to effect proper mail service under Rule 4(d), however, a plaintiff must include both an acknowledgment form that the defendant may sign and return to indicate that service of a summons is waived <u>and</u> "a prepaid means of compliance in writing," such as a self-addressed, stamped envelope for returning the waiver. FED. R. CIV. P. 4(d)(2)(B) and (G); *see also* Forms 1A and 1B in the Appendix of Forms in the Federal Rules of Civil Procedure; *Armco, Inc. v. Penrod-Staffer Bldg. Sys.*, 773 F.2d 1087, 1088 n.1 (4th Cir. 1994).

In the instant case, Grundy has stated that he sent the summonses and complaints to the Defendants by "United States Mail," but he has provided no information as to whether he complied with the requirements of Rule 4(d)(2) in so doing. Further, while Rule 4(e)(1), FED. R. CIV. P., provides, in pertinent part, that service upon an individual, other than an infant or an incompetent, may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts

17

of general jurisdiction of the State," it does not appear that Grundy has complied with either the law of Alabama or the law of Maryland (which would apply only to Defendant Louis Vaughn) in effecting service upon these two Defendants. Rule 4.1(c), ALA. R. CIV. P., permits service by <u>certified</u> mail, but service by that method must be effected by the clerk of the court rather than by the plaintiff. *See Federal Deposit Ins. Corp. v. Sims*, 100 F. R. D. 792, 795 (M.D. Ala. 1984). Rule 2-121(a), MD. R. P., also permits service by <u>certified</u> mail, but requires that restricted delivery be requested. The record contains absolutely no evidence from which it may be concluded that service was properly effected under federal, Alabama, or Maryland law on either Defendant Louis Vaughn or Defendant Scott Slate. Grundy's motion for an order compelling those Defendants to respond (Document #21) is therefore due to be denied.

Grundy's motion for an order compelling Defendant Scott Slate to "accept pleadings" or "provide Plaintiff with his mailing address" (Document #23) is also due to be denied. As noted above, Rule 4(c)(1), FED. R. CIV. P., clearly places the responsibility for effecting service upon the plaintiff. This responsibility includes obtaining a correct address for each defendant. In this case, it appears only that Grundy has an incorrect address for Defendant Slate. While Grundy makes the conclusory assertion that Defendant Slate "is intentionally avoiding service," he has set forth no factual allegations to support this statement.

## MOTION TO REMOVE

Plaintiff Grundy has filed a "Motion to Consolidate, Transfer and/or Acquire Jurisdiction of State Court Action" in which he requests that this Court "acquire jurisdiction over" the civil action that he himself filed in Morgan County Circuit Court prior to filing the instant action in this court.

18

The Court construes Grundy's motion as a motion to remove the state court action to this court. The removal statute, however, provides only for removal of a state court action to federal court by a <u>defendant</u> to the action. 28 U.S.C. § 1446. Grundy's motion to remove the state court action to this Court (Document #22) is therefore due to be denied.

## CONCLUSION

Based on the foregoing, the motions for summary judgment filed by Defendants Jack Caddell, Thomas Caddell, Bobby Day, Pat Orr, Glenn Thompson, Sherrie Brown, and Steve Haddock are due to be granted. The Court expressly finds that there are no disputed issues of material fact and that those Defendants are entitled to judgment as a matter of law. The Court also finds that Grundy's motions regarding discovery, his motion to compel certain defendants to respond, his motion to compel Defendant Slate to accept his pleadings, and his motion to remove his state court action to this court are due to be denied.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion.

DONE this 29th day of September, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE